## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER HOHMAN,

       Plaintiff,

       v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

CIVIL ACTION NO. 3:21-cv-00856

(SAPORITO, M.J.)

## MEMORANDUM

In this matter, the plaintiff, Christopher Hohman, seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I.  BACKGROUND

On May 30, 2019, Hohman protectively filed a claim for disability insurance benefits, asserting a disability onset date of November 10, 2016. The claim was initially denied by state agency reviewers on November 1, 2019, and upon reconsideration on April 24, 2020. The

plaintiff then requested an administrative hearing.

A hearing was subsequently held on August 17, 2020, before an administrative law judge, Michelle Wolfe (the "ALJ"). In addition to the plaintiff himself, the ALJ received testimony from an impartial vocational expert, Donna Nealon. The plaintiff was represented by counsel at the hearing.

On September 10, 2020, the ALJ denied Hohman's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Hohman was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Hohman had not engaged in substantial gainful activity from March 12, 2019, through his date last insured of December 31, 2019. At step two, the ALJ found that Hohman had the severe impairments of: degenerative disc disease of thoracic and lumbar spine; status post-cervical fusion; large fiber polyneuropathy, diabetes mellitus, obesity, coronary artery disease, and hypertrophic cardiomyopathy. At step three, the ALJ found that Hohman did not have an impairment or combination of impairments that

meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (eff. Apr. 1, 2018).[1]

Between steps three and four of the sequential evaluation process, the ALJ assessed Hohman's residual functional capacity ("RFC"). *See generally id.* at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Hohman had the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b),[2] with the following limitations:

> The claimant must be afforded a sit/stand option with each interval being maximum of 30 minutes each time, but not off task when transferring. The claimant can frequently push/pull with the upper and lower extremities. The claimant can frequently kneel and crouch. The claimant can occasionally balance, stoop, crawl, and climb, but never on ladders, ropes, or scaffolds. The claimant is limited to frequent exposure to temperature extremes of cold, wetness, humidity, and vibrations. The claimant requires a cane for ambulation at times.

---

[1] We note that the agency's list of musculoskeletal disorders was extensively revised effective April 2, 2021, after this plaintiff's application for disability and disability benefits was adjudicated by the agency. *See generally* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164 (Dec. 3, 2020) (to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1).

[2] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

(Tr. 14.)

In making these factual findings regarding Hohman's RFC, the ALJ considered his symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 404.1529; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive she found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. § 404.1520c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Hohman was capable of performing his past relevant work as an emergency service coordinator/dispatcher, DOT # 249.167-014. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity. Based on this finding, the ALJ concluded that Hohman was not disabled for Social Security purposes.

The plaintiff sought further administrative review of his claim by the Appeals Council, but his request was denied on March 10, 2021, making the ALJ's September 2020 decision the final decision of the

Commissioner subject to judicial review by this court.

Hohman timely filed his complaint in this court on May 11, 2021. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II. DISCUSSION

Under the Social Security Act, the question before this Court is not whether Hohman is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Hohman asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to properly evaluate a medical opinion by Hohman's treating physician; (2) the ALJ failed to properly consider Hohman's subjective allegations regarding his symptoms; (3) the ALJ erred at step three in finding that Hohman did

not have an impairment or combination of impairments that met the criteria of Listed Impairment 1.04, concerning disorders of the spine; and (4) the ALJ erred at step three in finding that Hohman did not have an impairment or combination of impairments that met the criteria of Listed Impairment 11.14, concerning peripheral neuropathy.[3]

## A. Medical Opinions and Prior Administrative Findings

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in her evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the

---

[3] The plaintiff's brief articulated three claims of error, including the two step-three errors identified in the text above. But the plaintiff's third claim of error was an extremely broad claim that the ALJ's RFC finding—that the plaintiff was capable of performing light work—was not supported by substantial evidence. A close reading of the brief, however, reveals that this generalized grievance rests on the two more specific errors identified in the text above, concerning the ALJ's evaluation of a treating physician's medical opinion and of the plaintiff's subjective symptoms.

evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed his administrative claim for benefits in May 2019. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in

the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating

opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at \*7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at \*4; *see also* 20 C.F.R. § 404.1520c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. § 404.1520c(a); *Densberger*, 2021 WL 1172982, at \*8. Under the new regulations, "[t]he two 'most important factors for

determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. § 404.1520c(c)(1) (supportability), and *id.* § 404.1520c(c)(2) (consistency), *with id.* § 404.1527(c)(3) (supportability), and *id.* § 404.1527(c)(4) (consistency).[4] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. § 404.1520c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. § 404.1520c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well

---

[4] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

### 1. Prior Administrative Findings

The ALJ considered the prior administrative findings in this case, which included the medical opinions of state agency medical and psychological consultants. (Tr. 17–18.)

The prior administrative findings included the opinions of two state agency psychological consultants, Marci Coutier, Ph.D., and Thomas Fink, Ph.D, both of whom found that Hohman had no mental medically determinable impairments. In evaluating the opinions of Dr. Cloutier and Dr. Fink, the ALJ found that:

> The undersigned finds this opinion persuasive, as it is supported by and consistent with the medical evidence of record and activities of daily living previously discussed. Specifically, the claimant does not allege any mental health impairments, there is no diagnosed psychiatric disorder in the medical evidence of record, there is no reported inpatient or outpatient psychiatric treatment, and he does not take any psychiatric medications.

(Tr. 17.)

The prior administrative findings included the opinion of state agency medical consultant, Chankun Chung, M.D., who had found the claimant capable of performing light work with some postural limitations. Based on his review of Hohman's medical records, Dr. Chung found that Hohman was capable of lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently. Dr. Chung found that Hohman was capable of sitting, standing, or walking up to six hours per 8-hour workday. Dr. Chung additionally found that Hohman was capable of frequent kneeling or crouching, but only occasional balancing, stooping, crawling, or climbing of ramps, stairs, ladders, ropes, or scaffolds. In evaluating the opinion of Dr. Chung, the ALJ found that:

> The undersigned finds this opinion somewhat persuasive, as it is generally supported by and consistent with the medical evidence of record and activities of daily living previously discussed. Specifically, the record shows that the claimant suffers degenerative disc disease of thoracic and lumbar spine, status-post cervical fusion, large fiber polyneuropathy, diabetes mellitus, obesity, coronary artery disease, and hypertrophic cardiomyopathy, which do limit his ability to perform work-related activities. However, the record also shows that the claimant's treatment has been relatively effective in controlling his symptoms and physical examinations showed full strength, intact sensory, normal coordination, and normal gait. Still, in consideration of the claimant's testimony at the hearing, to the extent reasonably supported by the

> record, the undersigned accommodated greater
> physical functional limitations than determined by the
> State agency medical consultant.

(Tr. 18.)

The prior administrative findings included the opinion of state agency medical consultant, Chevaughn Daniel, M.D., who likewise had found the claimant capable of performing light work with some postural limitations. Based on her review of Hohman's medical records, Dr. Daniel found that Hohman was capable of lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently. Dr. Daniel found that Hohman was capable of sitting, standing, or walking up to six hours per 8-hour workday. Dr. Daniel additionally found that Hohman was capable of frequent balancing, kneeling, crouching, crawling, or climbing of ramps and stairs, but only occasional stooping or climbing of ladders, ropes, or scaffolds. In evaluating the opinion of Dr. Daniel, the ALJ found that:

> The undersigned finds this opinion somewhat
> persuasive, as it is supported by and consistent with
> the medical evidence of record and activities of daily
> living previously discussed. Still, in consideration of
> the claimant's testimony at the hearing, to the extent
> reasonably supported by the record, the undersigned
> accommodated greater physical functional limitations
> than determined by the State agency medical

consultant.

(Tr. 18.)

The plaintiff has not challenged the ALJ's evaluation of these prior administrative findings.

### 2. *Treating Physician Opinion*

On July 14, 2020, Hohman's treating family physician, Carol Miller Schaeffer, M.D., completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form. Dr. Schaeffer opined that, in connection with diagnoses of angina and coronary artery disease, Hohman was capable of lifting up to 10 pounds only occasionally. She found that Hohman was capable of sitting for a total of 90 minutes per day, stand for a total of four hours per day, and walk for a total of one hour per day.[5] Based on diagnoses of cervical myopathy with radiculopathy, spinal stenosis, didactic neuropathy, and coronary artery disease, Dr. Schaefer found it to be medically necessary for Hohman to use a cane to ambulate up to maximum of 500 feet, and that he would be

---

[5] This adds up to less than eight hours per workday. When prompted by the form to explain what activity Hohman would perform for the remaining 2-1/2 hours of each workday, Dr. Schaeffer left the space blank.

- 14 -

unable to carry small objects in his free hand while doing so. Dr. Schaeffer opined that Hohman was capable of using his hands for reaching or pushing/pulling only occasionally, and never for handling, fingering, or feeling.[6] Dr. Schaeffer opined that, based on his diagnoses of radiculopathy and neuropathy, Hohman could never use his feet to operate foot controls. Based on these same conditions, Dr. Shaeffer found that Hohman could never balance, stoop, kneel, crouch, crawl, or climb stairs, ramps, ladders, or scaffolds. Dr. Schaeffer further found that Hohman was subject to certain environmental limitations, including complete avoidance of exposure to unprotected heights, moving mechanical parts, humidity and wetness, extreme cold, extreme heat, vibrations, dust, odors, fumes, and pulmonary irritants, and no more than occasional operation of a motor vehicle.[7] She opined that he also required a quiet workplace.[8] Dr. Schaeffer opined that, due to his physical impairments, Hohman was incapable of performing activities such as shopping, traveling with without a companion for assistance,

---

[6] When prompted by the form to identify particular medical or clinical findings to support this assessment, Dr. Schaeffer left the space blank.

[7] *See supra* note 6.

[8] *See supra* note 6.

walking a block at a reasonable pace on rough or uneven surfaces, climbing a few steps at a reasonable pace with the use of a single handrail, preparing a single meal and feeding himself, or working, handling, or using papers or files.[9] (Tr. 667–72.)

Upon review, the ALJ found that Dr. Schaeffer's opinion was not persuasive. In particular, the ALJ found that:

> The undersigned finds this very limited assessment to be unpersuasive as it is not supported by or consistent with the medical evidence of record or activities of daily living as previously discussed. Specifically, post-surgery the claimant has had no cord compression and his motor strength has been mostly within normal limits, aside from the 4/5 in two different neurology visits with the remainder of his examinations showing normal findings. Dr. Schaeffer's assessment is also not consistent with the claimant's activities of daily living that show he continued to operate his business until October 2019. In addition, Dr. Schaeffer's opinion is internally inconsistent as she noted that the claimant is unable to use foot controls at all, but can occasionally operate a motor vehicle. For these reasons, the undersigned does not find Dr. Schaeffer's[] medical source statement to be persuasive.

(Tr. 27–28.)

Here, the ALJ properly considered the medical evidence of record

---

[9] When prompted by the form to identify particular medical or clinical findings to support this assessment, Dr. Schaeffer responded "same as prev[ious]," but the previous space was blank.

and the relevant factors of supportability and consistency. She expressly articulated the basis of her evaluation and her findings with respect to the persuasiveness of this opinion as well.

The plaintiff argues that the ALJ failed to properly consider the medical and non-medical evidence that purportedly supports or is consistent with Dr. Schaeffer's opinion, pointing to various objective medical findings and the claimant's own subjective complaints of pain or other symptoms. But none of this evidence is inconsistent with the ALJ's finding that the more extensive limitations in Dr. Schaeffer's opinion were not supported by the objective medical evidence and were not consistent with evidence from other medical providers or other evidence in the record. While this same evidence might reasonably support a different conclusion as well, it does not compel it.

Accordingly, we find the ALJ's evaluation of the opinion of treating family physician Dr. Schaeffer is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## B. Subjective Evidence of the Plaintiff's Symptoms

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in her evaluation of the

plaintiff's symptoms, including statements or testimony by Hohman himself. *See generally* 20 C.F.R. § 404.1502(i) ("Symptoms means your own description of your physical or mental impairment.").

Standing alone, a claimant's allegation of pain or other symptoms is not enough to establish an impairment or disability. 20 C.F.R. § 404.1529(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . ."). "An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so." *Prokopick*, 272 Fed. App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999)).

When evaluating a claimant's subjective allegations of pain or other symptoms, an ALJ utilizes a two-step process. Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *2 (revised Oct. 25, 2017). First, the ALJ must determine whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. *Id.* at *3; *see also* 20 C.F.R. § 404.1529(b). A claimant cannot be found to be "disabled based on alleged symptoms alone." Soc. Sec. Ruling 16-3p, 2017

WL 5180304, at *4.

Once the ALJ has found that a medically determinable impairment has been established, the ALJ must then evaluate the claimant's allegations about the intensity, persistence, or functionally limiting effects of his or her symptoms against the evidence of record. *Id.* This evaluation requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Here, in evaluating the plaintiff's symptoms, the ALJ expressly considered and extensively discussed both the medical and non-medical evidence in the record. (Tr. 15–19.) This included the plaintiff's statements regarding the limiting effects of his symptoms. Based on her consideration of the whole record, the ALJ properly concluded that, while Hohman's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the

record." (Tr. 15.)

Although Hohman quibbles with the outcome of the ALJ's analysis of the evidence of record, it is clear that the ALJ properly evaluated the claimant's symptoms in accordance with the applicable regulations, and that the ALJ reasonably concluded that, notwithstanding the claimant's subjective complaints of pain and other symptoms, the evidence as a whole did not support physical or mental limitations in excess of those set forth in the ALJ's RFC determination. While this same evidence might have also reasonably supported the adoption of substantially greater limitations, it did not compel such a finding.

Accordingly, we find the ALJ's evaluation of the subjective evidence of the plaintiff's symptoms is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### C. Step Three: Listings 1.04 and 11.14

Among his severe impairments, the plaintiff suffered from degenerative disc disease of thoracic and lumbar spine. In July 2017, he underwent a cervical fusion. Post-surgery, he reported some improvement, but his pain and impairments continued. As a result of this medical condition, Hohman argues that the ALJ should have found him

disabled at step three of the five-step evaluation process.

Mere diagnosis of an impairment included in the listings is insufficient to establish disability. *See* 20 C.F.R. § 404.1525(d) ("Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."). "A claimant bears the burden of establishing each element of a Listing, or 'all of the criteria in the listing.' If even one element is not satisfied, then the ALJ has substantial evidence to conclude that the claimant's impairment is not equivalent and does not meet a Listing." *Weidman v. Colvin*, 164 F. Supp. 3d 650, 659 (M.D. Pa. 2015) (quoting 20 C.F.R. § 404.1525(d)) (citations omitted); *see also Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

At step three, the ALJ found that Hohman did not satisfy the criteria of any of the listings. In particular, the ALJ considered listing 1.04, concerning disorders of the spine. With respect to this listing, the ALJ stated:

> The claimant's degenerative disc disease does not meet Listing 1.04 because the record does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of:

Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is an involvement of the lower back, positive straight-leg raising; or [s]pinal arachnoiditis; or [l]umbar spinal stenosis resulting in pseudoclaudication. Instead, the evidence shows a normal gait and no decreased strength or reflexes.

(Tr. 13.)

Listed impairment 1.04 may be established by satisfying the criteria set forth in Section 1.04 of the Listing of Impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App 1, Pt. A1, § 1.04 (eff. Apr. 1, 2018). As set forth in the Listing of Impairments, these criteria are:

*Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested

> by serve burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id.* The listings further define the term "inability to ambulate effectively":

> Inability to ambulate effectively means an extreme limitation to the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities.

*Id.* § 100.B2b(1) (emphasis added).

Here, although Hohman has pointed to medical records indicating a diagnosis of radiculopathy, which is evidence of nerve root compression, *see, e.g.*, *Stockett v. Comm'r of Soc. Sec.*, 216 F. Supp. 3d 440, 456 (D.N.J. 2016), his condition does not satisfy the paragraph A criteria because, as the ALJ noted, there is no evidence of decreased strength or reflexes. The plaintiff does not suggest that he has satisfied the paragraph B criteria,

and there is no evidence of spinal arachnoiditis in the record. Finally, the plaintiff's condition does not satisfy the paragraph C criteria because, although there is evidence of degenerative disc disease of the lumbar area, there is no evidence of significant stenosis and there is no evidence of pseudoclaudication or an inability to ambulate effectively—indeed, as the ALJ noted, the record includes repeated findings of normal gait.

The ALJ also considered listing 11.14, concerning peripheral neuropathy. With respect to this listing, the ALJ stated:

> The undersigned finds that the claimant's impairment does not meet listing 11.14A because it is not associated with evidence of disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities.

> The undersigned also finds that the claimant's impairment does not meet listing 11.14B because it has not been shown to be associated with marked limitation in physical functioning, and has not been shown to cause a marked limitation in: understanding, remembering or applying information; or interacting with others; or concentrating, persisting, or maintaining pace; or adapting or managing oneself.

(Tr. 13–14 (citations omitted).)

Listed Impairment 11.14 may be established by satisfying *either* the paragraph A criteria *or* the paragraph B criteria set forth in Section

11.14 of the Listing of Impairments. *See* 20 C.F.R. pt. 404, subpt. P, app.

1, § 11.14. As set forth in the Listing of Impairments, these criteria are:

> A. Disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
>
> B. Marked limitation in physical functioning, and in one of the following:
>
> 1. Understanding, remembering, or applying information; or
>
> 2. Interacting with others; or
>
> 3. Concentrating, persisting, or maintaining pace; or
>
> 4. Adapting or managing oneself.

*Id.* (citations omitted).

The plaintiff contends that he has satisfied the paragraph A criteria, citing Dr. Schaeffer's opinion as evidence that he has "great difficulty sitting, standing and walking," that he must use a cane to ambulate, and he cannot carry items in his free hand when walking with a cane. But, setting aside the ALJ's finding that Dr. Schaeffer's opinion was not persuasive, these impairments are not sufficient to demonstrate an "extreme limitation" in Hohman's ability to stand up from a seated

position or maintain his balance in a standing position. Under the listings, an extreme limitation is an inability to stand up from a seated position or maintain balance in a standing position "without the assistance of another person or the use of an assistive device, such as a walker, *two* crutches, or *two* canes." *Id.* § 11.00D2 (emphasis added).

The plaintiff also contends that he has satisfied the paragraph B criteria, again citing only Dr. Schaeffer's opinion as evidence that he has marked limitations in physical functioning and in maintaining pace. A "marked limitation in physical functioning" means that a claimant is "seriously limited in the ability to independently initiate, sustain, and complete work-related physical activities," *id.* § 11.00G2a, such as "[s]tanding up from a seated position, balancing while standing or walking, or using both your upper extremities for fine and gross movements," *id.* § 11.00G3a. This limitation may be caused by the neurological disorder itself, or by pain, fatigue, or other symptoms of the neurological disorder. *See id.* § 11.00G3a. A marked limitation in mental functional area of concentrating, persisting, or maintaining pace means that a claimant is "seriously limited in the ability to function independently, appropriately, effectively, and on a sustained basis in

work settings," *id.* § 11.00G2b, with respect to his or her "abilities to focus attention on work activities and to stay on-task at a sustained rate," *id.* § 11.00G3b(iii), such as "[i]nitiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day," *id.*

Settling aside the ALJ's finding that Dr. Schaeffer's opinion was not persuasive, the limitations described in her opinion are simply not sufficient to demonstrate a marked limitation in physical functioning. As the ALJ noted in connection with listing 1.04, Hohman repeatedly exhibited normal gait with no decrease in strength or reflexes. While Hohman undoubtedly experienced pain or discomfort as a consequence of his medical condition, there is simply no evidence in the record that he was unable to *independently* initiate, sustain, or complete activities such as standing up from a seated position or maintain his balance while

standing or walking. While Hohman's *walking* pace in the colloquial sense may indeed have been impaired by his symptoms, Dr. Schaeffer's opinion does not address *at all* the mental functional area of "concentrating, persisting, or maintaining pace" that is at issue in this listing. Moreover, as we have discussed above, the plaintiff has not contended, and there is no evidence in the record, that he suffers from any mental impairments at all, including in the area of concentrating, persisting, or maintaining pace.

In the absence of compelling evidence of a marked limitation in physical functioning or in any of the four areas of mental functioning, the ALJ had substantial evidence to conclude that Hohman's impairment due to peripheral neuropathy did not meet or equal the criteria of listing 11.14B. *See Weidman*, 164 F. Supp. 3d at 659.

Accordingly, we find the ALJ's step-three determination that Hohman did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Hohman was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: September 30, 2022                    ***s/Joseph F. Saporito, Jr.***
                                             JOSEPH F. SAPORITO, JR.
                                             United States Magistrate Judge